# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

Mercedes Lott; and Malcolm Tate

Plaintiffs,

v.

Vivint, Inc.; and Smart Home Pros, Inc. f/k/a ARM Security, Inc.

Defendants.

Civil Action No. 3:17-CV-872-DPJ-FKB

## COMPLAINT

COME NOW the Plaintiffs, Mercedes Lott and Malcolm Tate, who file suit against the above-named Defendants, and plead as follows:

*JURY TRIAL DEMANDED*

## PARTIES

1. The first-named Plaintiff, Mercedes Lott, is an adult resident of Simpson County, Mississippi, and former employee of the Defendants, Vivint, Inc, and Smart Homme Pros, Inc. Mercedes Lott may be served through his counsel in this matter.

2. The second-named Plaintiff, Malcolm Tate, is an adult resident of Neshoba County, Mississippi, and former employee of the Defendants, Vivint, Inc, and Smart Home Pros, Inc.. Malcolm Tate may be served through his counsel in this matter.

3. The first-named Defendant, Vivint, Inc. ("Vivint"), is a Utah-based corporation, registered as a foreign company licensed to do business in the state of Mississippi, with its principal place of business located in Provo, Utah. Vivint may be served

with process through its registered agent with the Mississippi Secretary of State's Office: CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. Second-named Defendant, Smart Home Pros, Inc., is a Utah-based corporation, and, upon information and belief, a wholly-owned subsidiary of Vivint, Inc., that is registered as a foreign company licensed to do business in the state of Mississippi. Its principal place of business located in Provo, Utah. Vivint may be served with process through its registered agent with the Mississippi Secretary of State's Office: CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

5. This Court possesses federal question subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331 and the Fair Labor Standards Act. This Court has the authority to grant declaratory relief under the FLSA and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Further, this Court possesses federal question subject-matter jurisdiction over the Plaintiffs' claims under the Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and § 1962(d).

6. This Court possesses personal jurisdiction over each of the Defendants in this action based upon their substantial and purposeful contacts with Mississippi, the forum state.

7. Venue for this dispute, among other potentially-permissible venues, properly lies with this Court, as this litigation involves substantial alleged acts or omissions which occurred in the Jackson, Mississippi metropolitan area (among other locations, presumably), located within judicial district of the United States District Court for the Southern District of

Mississippi. In particular, the recruitments of the Plaintiffs in their seasonal employment with the Defendants occurred within the boundaries of the United States District Court for the Southern District of Mississippi, Northern Division.

## FACTS

8. On or about August 2016, Mercedes Lott, a student at Hinds Community College in Raymond, Hinds County, Mississippi, began her employment with Vivint's Jackson, Miss. location as a security-system-installer for that company.

9. Then, beginning on or about May 2017, and along with Malcolm Tate, Mercedes Lott began her employment with the Defendants (as did Malcolm Tate) as home security sales representative(s).

10. The Plaintiffs' sales manager during their employment with the Defendants was Peter Maughn.

11. During their employment with the Defendants over the summer of 2017, the Plaintiffs were misclassified as exempt from the Fair Labor Standards Act. The Defendants have purposefully conspired to misclassify these seasonal so-called "sales representatives" as exempt from the Fair Labor Standards Act as exempt, outside sales employees.

12. The Plaintiffs, Mississippi citizens, were recruited by the Defendants to work as so-called "sales representatives" for the Defendants for the summer of 2017.

13. The Plaintiffs accepted their employment under the false pretense that they would be true outside salespersons, with the ability to consummate (close) sales-transactions for their employer, and be paid on a commission basis.

14. However, when the Plaintiffs were sent by the Defendants to their so-called "sales region", in West Texas, the Plaintiffs began to discover the unfortunate, and concealed, reality of their seasonal employment with the Defendants.

15. First, the Plaintiffs discovered that they were not true outside sales representatives, as they were forced to attend daily, and lengthy, meetings inside of the Vivint field office that the Defendants set up in the apartment complex where all so-called "sales representatives" in that "sales region" were forced to live together.

16. Second, the Plaintiffs discovered that they were not permitted to complete sales of the Defendants products and services. Instead, the Plaintiffs – so-called "sales representatives" – were required, by the Defendants' company policies, to hand off the telephone, during their sales calls, to call center sales representatives who work at the Defendants' company headquarters in Provo, Utah, who would consummate the sale(s).

17. The Plaintiffs were, at most, (grossly-underpaid and mislead) promoters of the Defendants' products and services who could not close, or execute, any contracts binding their principals, the Defendants. They were not legitimate outside sales employees, as defined, and as interpreted, under the Fair Labor Standards Act.

18. At all relevant times, the Plaintiffs were entitled to the federal minimum wage of $7.25, and overtime compensation (for all hours worked above 40 per workweek), for all hours spent on the job, and on behalf of their employers, the Defendants.

19. During their employment with the Defendants – but prior to the Defendants' wrongful and retaliatory discharges of the Plaintiffs on July 22, 2017 – the Plaintiffs regularly spent from 9-11 hours on the job, from Monday through Friday; and 13-14 hours on the job

each Saturday worked. In sum, the Plaintiffs worked 65-70, each week, during their employment with the Defendants.

20.     In addition to the Defendants intentionally misclassifying the Plaintiffs as exempt under the outside sales exemption contained in the Fair Labor Standards Act and not paying the Plaintiffs the federal minimum wage and overtime for all hours worked on the job, as required by law, the Defendants also required the Plaintiffs to engage in unlawful promotion-activities, as well of other fraudulent activities, to further the concerted, and well-organized, business interests of the Defendants to cheat their prospective customers.

21.     First, the Defendants, through its management, required the Plaintiffs to lie to, misrepresent, defraud, and otherwise trick prospective Vivint customers (whose sales would be closed by the Vivint sales force in Provo, Utah, and not the so-called door-to-door "sales representatives", like the Plaintiffs) about the terms, prices, services, and other material pieces of information needed to make an informed decision (and to enter into a binding contract, from the standpoint of mutual assent) regarding the Defendants' products and services. Specifically, the Plaintiffs were ordered by the Defendants to conceal, lie about, and otherwise misrepresent the following: that Vivint customers would receive three free months of service (not true); that Vivint would buy prospective customers with existing home-security-service-contracts out of their existing contracts (not true); that the prospective customers credit card on file would not have charges placed against it by the Defendants (not true); and to lie to customers about when their first bill would come due for payment (tell them whatever you have to say to get them on the line with the sales force at Defendants' company headquarters in Provo, Utah).

22. Second, the Defendants, through their management, required the Plaintiffs to knock on the doors of, and otherwise solicit/promote the Defendants' products and services, at residences that were clearly marked with "No Soliciting" signage. Not only did this company policy of the Defendants force the Plaintiffs to violate Texas state law, but it also knowingly endangered the lives and health of the Plaintiffs.

23. Third, Defendants, through their management, required the Plaintiffs to lie to prospective customers by telling the prospective customers that they would have 30 days from the date they executed their service-contracts with the Defendants' sales force in Provo, Utah, to cancel said consumer-contracts. The truth, many customers would later discover after Day 4, is that they only had three business days to cancel those contracts and that they are now obligated to a five-year Vivint service contract with massive termination penalties and fees.

24. From early in their employment to the date that the Defendants wrongfully the Plaintiffs, July 22, 2017, Mercedes Lott and Malcolm Tate repeatedly complained to their management that they were not comfortable with the Defendants' policies of forcing them to engage in the unlawful activities, pleaded above.

25. Finally, on July 22, 2017, the Defendants, via manager, Peter Maughn, told the Plaintiffs that if they did not continue to engage in the unlawful activities, pleaded above – and, in addition, if they did not stop complaining about doing so – that Defendants would fire the Plaintiffs. At that moment, the Plaintiffs made clear that they would no longer engage in the unlawful activities required by the Defendants and that they, accordingly, considered themselves fired (or, in the alternative, constrictively discharged for complaining

about unlawful activities in which the Defendants required them to engage in order to maintain their employment).

26. Defendants wrongfully, and in retaliation for the Plaintiffs' refusal to participate in the Defendants' unlawful scheme, terminated the Plaintiffs on July 22, 2017.

27. Further, as a result of this wrongful termination (or, in the alternative, wrongful constructive termination following the Plaintiffs' whistleblower activities toward Defendants), the Plaintiffs have had their "back end" sales commission that Defendants owe them (approximately $3,000 each) stolen by the Defendants. The Defendants do not pay the promised, and earned, "back end" sales commission when there is a voluntary discharge from employment. However, the notion that the Plaintiffs were voluntarily discharged by the Defendants in a myth and it is not true.

28. The true motive for the (wrongful) discharge of the Plaintiffs was malicious and unlawful retaliation for the Plaintiffs continuing to push the issues of the unlawful activities, pleaded above, that Defendants required the Plaintiffs to engage in, as a condition for their (misclassified under the FLSA) employment.

29. The stated reason for Vivint's (wrongful) termination (or, in the alternative, constructive discharge) of the Plaintiffs constitutes a knowing lie on the part of Vivint.

30. The Plaintiffs have suffered severe financial damages that were solely and proximately caused by unlawful, concerted, conspired to, dishonest, deceptive, malicious, and retaliatory actions pleaded in this Complaint.

## COUNT ONE – VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (UNPAID OVERTIME AND MINIMUM WAGE)

31.     The Plaintiffs incorporate by reference all allegations of all previous Paragraphs and further alleges as follows:

32.     At all relevant times, Plaintiffs were covered "persons" under the FLSA.

33.     At all relevant times, the Defendants were covered "employers" under the FLSA.

34.     The Defendants have conspired, and engaged in an elaborate scheme, to commit systemic, continual, repeated, knowing, intentional, and malicious violations of the FLSA, as amended. In particular, the Defendants have engaged in knowing, and repeated, violations of the FLSA's requirement to pay overtime at 1.5 times the *true base hourly wage* (not to be less than the federal minimum wage of $7.25/per hour) for all hours worked in excess of 40 per week.

35.     The Defendants have also conspired to knowingly misclassify the Plaintiffs under the FLSA to avoid paying the federal minimum wage of $7.25. per hour for all hours that the Plaintiffs spent on the job, for the benefit of the Defendants' business interests.

36.     The Defendants' management even went so far as to conspire to misclassify the Plaintiffs as exempt under the FLSA, when they keow that the Plaintiffs were not true outside salespeople, as defined by the FLSA and the applicable Dept. of Labor regulations, and that no such exemption under the FLSA had been triggered viz a viz the Plaintiffs.

37.     Nonetheless, the Defendants knowingly conspired to violate the applicable wage and hour laws by failing to pay minimum wage and overtime wages that it knew, in fact, were owed to the Plaintiffs.

38. The above wrongful acts on the part of the Defendants have solely and proximately caused the Plaintiffs severe financial damages.

39. BASED UPON THE ABOVE-PLEADED FACTS, the Plaintiffs, demand that they, be awarded damages, including punitive damages under the FLSA, in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages, all attorneys' fees, all costs of litigation, expenses, all legal pre-and-post-judgment interest, and all other relief that is appropriate under the FLSA, or that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT TWO – FRAUD

40. The Plaintiffs incorporate by reference all allegations of all previous Paragraphs and further alleges as follows:

41. Vivint made intentional, and false, representations of the materials terms, and conditions, of the Plaintiffs' employment with the Defendants, upon which the Plaintiffs reasonably relied in accepting the Defendants' offers of employment, as detailed in this Complaint, above. To be clear the Defendants' material misrepresentations made to the Plaintiffs, and reasonably relied upon by the Plaintiffs, include: the commission structure that they would be paid; the fact that Plaintiffs would not be forced to engage in unlawful activities to maintain their employment with the Defendants; that Plaintiffs would be provided housing and meals, at the expense of the Defendants, during their seasonal employment; that they would receive a large ($5,000-$10,000) "back end" commission check at the end of the summer of 2017.

42. The above wrongful acts have solely and proximately caused the Plaintiffs severe financial damages, and they have caused a financial windfall for the Defendants, who have stolen the "back end" commission payments owed by the Plaintiffs.

43. BASED UPON THE ABOVE-PLEADED FACTS, the Plaintiffs demand that they be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, punitive damages (in an amount **not less than $1,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT THREE – BREACHES OF CONTRACT (EXPRESS WARRANTIES)

44. The Plaintiffs incorporate by reference all allegations of all previous Paragraphs and further alleges as follows:

45. Defendants have committed systemic, continual, repeated, knowing, intentional, and malicious misrepresentations of express promises of the Plaintiffs' pay structure, as pleaded in this Complaint, above, and especially in regards to the Defendants' theft of the Plaintiffs' "back end" sales commission payments. In particular, Vivint has engaged in a pattern of deceptive, fraudulent, and dishonest wage-practices, in violation of the FLSA, and contradicting the pre-employment representations that the Defendants made to the Plaintiffs about their seasonal employment.

46. The above violations of express contractual terms have solely and proximately caused the Plaintiffs severe financial damages.

47. BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the Plaintiffs demand that they be awarded damages in an amount that shall be proved to finder-of-fact at trial. However, these pleaded-damages include, but are not limited to: actual damages, compensatory damages, all attorneys' fees, all costs of litigation, expenses, all legal pre-and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## COUNT FOUR – WRONGFUL TERMINATION (RETALIATORY DISCHARGE FOLLOWING REFUSAL TO PARTICIPATE IN ILLEGAL SCHEME OF DEFENDANTS)

48. The Plaintiffs incorporate by reference all allegations of all previous Paragraphs and further alleges as follows:

49. The Defendants unlawfully, maliciously, and out of vengeful retaliation for the Plaintiffs' whistleblower activities and refusal to participate in the Defendants' unlawful business-activities, wrongly terminated the Plaintiffs on July 22, 2017.

50. The true reason that the Plaintiffs were fired by the Defendants is that they continued to make demands for their legal rights to be paid lawfully and they refused to participate in the Defendants fraudulent business-activities (including the Defendants' requirement that the Plaintiffs solicit residences marked with "No Soliciting" signage – which is illegal under Texas law). Such demands bring these Plaintiffs under the *McArn*[1] (and its progeny) exceptions to the at-will employment principles under Mississippi state law.

51. BASED UPON THE ABOVE-PLEADED ALLEGATIONS, the Plaintiffs demand that they be awarded damages in an amount that shall be proved to finder-of-fact at

---

[1] *McArn v. Allied-Bruce Terminex, Inc.*, 626 So. 2d 603 (Miss. 1993).

trial. However, these pleaded-damages include, but are not limited to: actual damages (lost wages and income), compensatory damages (including the stolen "back end" commission payments promised to the Plaintiffs), punitive damages (in an amount **not less than $1,000,000.00**), all attorneys' fees, all costs of litigation, expenses, all legal pre-and post-judgment interest, and all other relief that the Court finds to be just and equitable under the facts to be proven at trial.

## **COUNT FIVE – VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962(c) and § 1962(d)**

52. Plaintiffs incorporate by reference the facts pleaded in the preceding Paragraphs of this Complaint.

53. At all relevant times, each of Defendants has been a "person" within the meaning of 18 U.S.C. § 1961(3), because each was capable of holding "a legal of beneficial interest in property."

54. Section 1962(c) makes it "unlawful for any person employed by or associated with any Enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such Enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

55. Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. 18 U.S.C. § 1962(d).

56. At all relevant times, Defendants, along with other individuals and entities, including likely unknown third-parties, operated an association-in-fact Enterprise, which was formed for the purpose of maximizing profits by unlawfully charging customers for undisclosed credit card account and falsely-represented window-products, and through

which Enterprise they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4). The Enterprise is called the "Enterprise." The activities of the Enterprise affected interstate commerce through a pattern of racketeering activity.

57. At all relevant times, the Enterprise constituted a single "Enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in Defendants' unlawful profit-making scheme.

58. The association-in-fact Enterprise consisted of at least Vivint, Inc, and Smart Home Pros, Inc., and currently-unidentified managers and agents of those companies. While members of the Enterprise participate in and are part of the Enterprise, they also have an existence separate and distinct from the Enterprise. The Enterprise has a systematic linkage because there are agreements, coordination activities, contracts, and financial agreements between the Defendants.

59. At all relevant times, the Enterprise: (1) had an existence separate and distinct from each RICO Defendant; (2) was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and (3) was an ongoing and continuing organization consisting of legal entities, including Defendants, and other entities and individuals associated for the common purpose of violating the Fair Labor Standards Act's minimum wage and overtime requirements, and for the common purpose of engaging in misleading sales tactics, omissions, and fraud, and deriving profits and revenues from those activities.

60. Each member of the Enterprise shared in the bounty generated by the Enterprise.

61. The Defendants, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme of violating the Fair Labor Standards Act's minimum wage and overtime requirements, and in forcing employees, like the Plaintiffs, to engage in misleading and unlawful sales tactics, omissions, and fraud, and deriving profits and revenues from those activities.

62. The Enterprise engaged in, and its activities affected, interstate and foreign commerce, because it involved commercial activities across state boundaries.

63. Defendants' systematic schemes to unlawfully, and fraudulently, gin profits by violating the Fair Labor Standards Act's minimum wage and overtime requirements, and in forcing employees, like the Plaintiffs, to engage in misleading and unlawful sales tactics, omissions, and fraud, and deriving profits and revenues from those activities, was facilitated by the use of the United States Mail and wire. Defendants' schemes constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), as acts of mail and wire fraud, under 18 U.S.C. §§ 1341, 1343.

64. Defendants used the mail and wire in furtherance of their scheme to unlawfully, and fraudulently, gin profits by violating the Fair Labor Standards Act's minimum wage and overtime requirements, and in forcing employees, like the Plaintiffs, to engage in misleading and unlawful sales tactics, omissions, and fraud, and deriving profits

and revenues from those activities. The Enterprise provided marketing materials, account statements, payoff demands, and engaged in collection efforts through the mail or wires. Through those means, the Enterprise conspired to violate the minimum wage and overtime requirements of the FLSA and otherwise defrauded (and forced the Plaintiffs to be a part of these frauds, until their retaliatory discharge on July 22, 2017) the consumer public, particularly in the state of Texas.

65. The Defendants' fraudulent scheme to avoid the minimum wage and overtime requirements of the FLSA, and the schemes to defraud the prospective customers of the Defendants and to solicit residences marked with "No Soliciting" signage (that the Plaintiffs complained about and refused to go along with on July 22, 2017), are unlawful.

66. Defendants made false statements using the Internet, telephone, facsimile, United States Mail, and other interstate commercial carriers regarding the employment terms of the Plaintiffs.

67. Each of these acts constituted an act of mail fraud for purposes of 18 U.S.C. § 1341.

68. Using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about the employment terms of the Plaintiffs, and to pursue and achieve their fraudulent schemes, described above, the Defendants engaged in repeated acts of wire fraud in violation of 18 U.S.C. § 1343, along with violations of the FLSA and the Texas Consumer-Protection Act (Vivint has been sued in an enforcement action, and entered into a Voluntary Consent Decree, with the Texas Attorney General's Office, among

many other state Attorneys' Generals Offices, for these same systemic violations of state consumer-protection laws).

69. The foregoing constitutes a pattern of racketeering activity under 18 U.S.C. § 1961(5). All of the foregoing acts are part of the nexus of the Enterprise and involved similar participants, a similar purpose, and similar impact on the class.

70. As a direct and proximate cause of these violations of 18 U.S.C. § 1962(c) and (d), the Plaintiffs have suffered damages, and Defendants are liable to Plaintiffs for treble damages, together with all costs of this action, plus attorneys' fees, under 18 U.S.C. § 1964(c).

71. Defendants were aware of the nature and scope of the Enterprise's unlawful scheme, and agreed to participate in it.

72. As a direct and proximate result of Defendants' unlawful acts, the Plaintiffs have been injured by the predicate acts which make up Defendants' patterns of racketeering activity, described in this Complaint, above.

73. The above-referenced facts constitute violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), Conspiracy to Violate RICO Act.

                                           MERCEDES LOTT; and
                                           MALCOLM TATE
                                           *The Plaintiffs*

                                             By: /s/ Macy D. Hanson
                                                 Macy D. Hanson
                                                 Attorney for the Plaintiffs

MACY D. HANSON – MS BAR # 104197
macy@macyhanson.com
THE LAW OFFICE OF MACY D. HANSON, PLLC
THE ECHELON CENTER
102 FIRST CHOICE DRIVE
MADISON, MISSISSIPPI 39110
TELEPHONE: (601) 853-9521
FACSIMILE: (601) 853-9327